TifEEMAisr, J.,
delivered tRe opinion of tRe court:
A respectful but earnest petition for rehearing has been presented in this case. We Rave given it careful consideration, and proceed to state the result.
On the main question, to which the former opinion was addressed, after careful examination, Roth on principle and authority, we not only Rave no doubt of the correctness of our views then given, Rut, on reflection and re-examination, think the conclusion arrived at is Reyond question.
Apparently exceptional cases may Re found, Rut on careful examination, no case can be found, well considered, holding a different doctrine.
*567 The case of Boyd v. Anderson, 1 Tennessee Reports, 437, is, at first sight, apparently such a case. There a party had given his bond in consideraton of five hundred dollars, to transfer to the plaintiff a land warrant for six hundred and forty acres of land. Plaintiff applied to him for the warrant, and he procured one from Lytle, and had the same assigned in f ufillment of his contract. A board of commissioners had been appointed by the State of Tennessee, to adjudicate the validity of land warrants of this class, and were authorized to ascertain such as were_bona fide and fairly obtained, and such as were fraudulent, and to declare the latter void. This warrant was presented to the board, and was adjudged void, as having been fraudulently obtained originally, whereupon the purchaser brought suit to recover back the money paid for the warrant, and was held entitled to recover. This was clearly correct. The party had contracted and was bound to deliver a valid warrant, one that would enable the purchaser to appropriate six hundred and forty acres of land. The delivery of a void warrant was not a-complianee with such contract, neither party knowing the fact at the time, and when the warrant was ascertained to be void, the consideration for the money paid had clearly failed, and the party paying had a right to recover the money so paid. ’ Neither party, as we have said, knew the fact that the warrant was void, and there was nothing on the face of it to show this fact. It is said, in argument here, the party got what he contracted for, a land warrant, yet recovered. But this is not correct; he contracted for a valid land warrant, and this was not such— was not, in fact, a warrant at all, except in form — and-he knew nothing to the contrary till it was so adjudged.
The case before us is a very different one. The party sells the note for an interest in land owned by "Walker. On its face it is for ten per cent, interest, and the purchaser buys this specific note, with a full knowledge of what it is. The seller refuses to bind himself, to make it good, by in- *568 dorsement. He not only does this, bnt he transfers it, with a special contract that there shall be no recourse on him arising out of such transfer, and this is accepted by the purchaser, and thereby becomes his contract, as well as that of the seller. Now, on what principle can the seller of such a note, under these circumstances, be held liable, contrary to the contract of the parties, to pay in money for the interest in land, when he has only agreed to give, and the other to accept, this particular note, and that without his personal liability on the same? Certainly, he must be held responsible, if at all, not on the contract, but for some fraud, deceit, or other .ground of like kind, or not at all, unless the law will raise a contract by implication over and above, and against the express agreement of the parties themselves, and enforce it. This never has been done, and cannot be. It is true the law raises certain implied contracts, or guaranties, even under this contract — that is, that the note is genuine and not a forgery; that the parties to it are competent to contract, and the like — and if the facts are not so on these obligations, the purchaser may recover. But it is beyond question they go on the ground of failure of consideration, the thing not being what it purported to bo — a fraud on the part of the seller. In this case, however, the parties were competent to contract; the note was genuine; there was no failure of title. The party iailed to be able to collect it by law, because it was, on its face, such a contract as could not be so enforced, and that face Yv'as known to him at the purchase, and he took the paper subject to this defect, and did not require it should be guarateed against loss on account of it by the seller. It falls clearly within the principle laid down in the above case, where the action will not lie — that is, “where justice does not require it, because, say the court, both parties acted with a full knowledge of all the facts and circumstances, and the consideration happened to fail.” It is added: “If the contract be illegal, and the parties be equally *569 guilty, uo action can be maintained.” It might be difficult for Walker to escape the effect of this principle, for, if the note was void for illegality, contrary to public policy and law, it would not be far from equal participation in the wrong to be a party to its negotiation and circulation, as well as originally to make such an instrument.
The principle is correctly stated by Mr. Byles, in his work on Bills and Notes, top p. 252: “If a bill or note, made or become payable to bearer, be delivered without indorsement, not in payment of a pre-existent debt, but by way of exchange for goods, for other bills or notes, or for money transferred to the party delivering the bill at the same time, such a transaction has been repeatedly held to be a sale of the bill by the party transferring it, and a purchase of the instrument, with all risks by the transferee.” He cites Lord Kenyon as saying “that if the holder of a bill send it to market without indorsing his name on it, neither morality nor the laws of the country will compel him to refund tie money for which he sold it, if he did not know at the time that it wras not a good bill,” and we add, the other party was not deceived by him. These principles must certainly apply, with even more force to the case where the party refuses to guarantee, and transfers or sells with an express contract that he shall not be liable. The party is thereby notified he must take the paper at his own risk, and unless there be fraud, concealment, or some other like ground, he cannot recover the consideration so paid. Of the correctness of these views, as applied to the facts of this case, we cannot doubt, and they are conclusive of this aspect of the case. As to the point suggested, that the title to the note was not transferred, we need but say that no such ground as failure of title is made in the bill, and it cannot be considered. In fact, the failure to recover the money was simply because the note was held illegal, because made before the law allowing a note for *570 ten per cent, went into effect. We need not further consider this question.
We have carefully examined the case again, to see if it is possible to give Walker relief on any ground of fraud or undue advantage taken of one who evidently appears to be a thriftless, and, probably, a very weak man. But, after an examination with an inclination to give relief in this direction if it could be done, we can find no ground, based on the issues made in the bill, on which such relief can be granted, in our judgment. The parties do not go on the ground of rescission for fraud, or advantage taken of a weak man. Walker does not disaffirm the contract, and ask a rescission, but abandons that, and seeks to recover the consideration paid'for the note — that is, the value of his interest in the land, or rather the amount of the note, and interest, as such consideration. He affirms the contract, and seeks to retain its benefits named — that is, the wagon and horses, and then to have Clark make good the note on Simrall & Hi finer, on specific charges of fraud, which are, in substance, that he promised, in order to get him to take the note indorsed without recourse, to make it all right, and assured him the deed of trust would make it good anyway, and further, that Clark had taken legal advice, and knew that the note and deed of trust could not be enforced, and let him have them fraudulently with this knowledge, in order to save himself' from loss.
We have again examined the testimony in the record, and we are compelled to say he fails to make good these charges, and only raises a slight suspicion of their existence in his favor. We inclined to think Clark had no suspicion at the time that the note was not valid, as it was made after the law authorizing ten per cent, interest had been passed, and -was to fall due after it was to take effect, but before it had actually gone into operation, and the chancellor held Walker entitled to recover, but his decree was reversed in this court.
*571 In fact, it is pretty clearly seen in this case, that the real contest was not made in the case by Walker, or so intended when'the bill of Walker was filed, but, in fact, was but interposed by Williams, who had purchased with him, and was being pressed for the purchase money, with the hope of aiding his defense, and to delay the original proceedings.
The petition vill be dismissed as to Walker, with costs.
We find that it was assumed in the former opinion that Young had not appealed in the original case, and therefore no relief could be had as to him, and the case was remanded.
We now see that a writ of error had been granted in court, in favor of Young, so that the whole case was here. The decree will be corrected so as to. give him relief as to the set-off, and the amount due both parties in the original bill will be ascertained, and the land sold by the clerk of this court, unless the money is paid in sixty days.